UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRENDA HUBBELL,

    Plaintiff,                                    Hon. Ellen S. Carmody

v.

                                                      Case No. 1:17-cv-197

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

# STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to

the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 51 years of age on her alleged disability onset date. (PageID.184). She possesses a ninth grade education and worked previously as a housekeeper. (PageID.65, 69-70, 215, 221-24). Plaintiff applied for benefits on June 7, 2014, alleging that she had been disabled since June 1, 2013, due to polycystic kidney disease, chronic back pain, restless leg syndrome, depression, and anxiety with panic attacks. (PageID.184-94, 214). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.84-182).

On February 1, 2016, Plaintiff appeared before ALJ Paul Jones with testimony being offered by Plaintiff and a vocational expert. (PageID.58-81). In a written decision dated February 18, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.45-52). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.29-33). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ found that Plaintiff experiences the following impairments: (1) benign right renal cyst; (2) kidney stone; (3) mild COPD/bronchitis/tobacco abuse; and (4) affective disorder. (PageID.47). The ALJ nevertheless denied Plaintiff's claim at step two on the ground that Plaintiff's impairments were not "severe." An impairment can be considered not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). While a claimant's burden at step two has been described as minimal, courts nevertheless recognize that "Congress has approved the threshold dismissal of claims obviously lacking medical merit." *Ibid.*; *see also*, *Hooper v. Commissioner of Social Security*, 2017 WL 726663 at *4 (E.D. Mich., Jan. 25, 2017) ("the inquiry at step two functions as an administrative convenience to screen out claims that are totally groundless from a medical perspective"). A review of the medical evidence reveals that the ALJ's decision is supported by substantial evidence.

On April 26, 2013, Plaintiff reported that she was experiencing "moderate to severe" pain in her right knee. (PageID.388-89). A physical examination revealed "no erythema, effusion, laxity, mild tenderness at hamstring insertion, negative McMurray's, Lachman's, no pain with stress of MCL/LCL." (PageID.389). Plaintiff was diagnosed with a "strain" for which "conservative treatment" was recommended. (PageID.389).

5

On April 25, 2013, Plaintiff reported that she was experiencing "syncopal episodes." (PageID.315-16). Specifically, Plaintiff reported that she had experienced 15-20 such episodes over the past 35 years. (PageID.315). Plaintiff's blood pressure was measured in various positions and postures and the results were "completely appropriate." (PageID.316). An examination of Plaintiff's heart revealed "regular rate and rhythm" and her lungs were "clear to auscultation." (PageID.316). An examination of Plaintiff's cranial nerves revealed no abnormality. (PageID.316). Plaintiff exhibited 5/5 strength in her upper and lower extremities with no evidence of sensory abnormality. (PageID.316). The doctor noted that Plaintiff's description of her alleged episodes was neither consistent with syncope nor seizure. (PageID.316). The record contains no further indication that Plaintiff experienced such episodes.

An October 17, 2013 ultrasound examination of Plaintiff's right kidney revealed the presence of cysts which were later deemed to be benign. (PageID.297, 349, 411). A February 21, 2014 CT scan revealed that Plaintiff's kidneys were "stable" with no evidence of hydronephrosis or obstructing calculus. (PageID.368).

On July 7, 2014, Plaintiff reported that she was experiencing back pain. (PageID.359-61). An examination of Plaintiff's thoracic spine revealed "no swelling, edema or erythema of surrounding tissue, normal sensation, normal strength and tone, no laxity or crepitus, normal thoracic spine movements, no known fractures or deformities and normal posture and gait." (PageID.361). An examination of Plaintiff's lumbar spine revealed "no swelling, edema or erythema of surrounding tissue, normal strength and tone, no laxity or crepitus, normal sensation, no known fractures or deformities, normal posture and gait and normal coordination and reflexes." (PageID.361). The doctor also reported that Plaintiff "sits comfortabl[y] in exam room chair with

6

legs crossed, easily changes positions." (PageID.361). X-rays of Plaintiff's thoracic and lumbar spine, taken on July 11, 2024, were "unremarkable." (PageID.353, 410).

Treatment notes dated January 15, 2015, indicate that Plaintiff was experiencing depression due to difficulties with her boyfriend and the recent passing of her mother. (PageID.521). Treatment notes dated February 17, 2015, indicate that Plaintiff had recently been meeting with a counselor. (PageID.512-14). Plaintiff reported that she was feeling "much better" and did not require medication. (PageID.512-14).

X-rays of Plaintiff's chest taken September 27, 2015, revealed "no acute disease." (PageID.551). A CT scan of Plaintiff's chest, performed on March 1, 2016, revealed that Plaintiff was experiencing bronchitis and "mild" COPD. (PageID.626).

The evidence simply fails to support the argument that Plaintiff suffered any impairment that more than minimally affected her ability to work. None of Plaintiff's treating physicians or regular care providers made findings or expressed opinions suggesting otherwise. The record does contain the opinion of Anthony Gensterblum, Ph.D. who conducted a consultive examination of Plaintiff on October 13, 2014. (PageID.462-65). Dr. Gensterblum reported that Plaintiff was suffering from a major depressive disorder and "would struggle to complete even simple and repetitive tasks." (PageID.465). The doctor also reported that Plaintiff "would not be able to maintain a regular work schedule or likely sustain effort on required work activities." (PageID.465). The ALJ afforded "little weight" to the doctor's opinion, specifically noting:

> This was a one-time evaluation and not necessarily representative of claimant's sustained functioning. Nonetheless, as with any opinion, I considered Dr. Gensterblum's opinion in the context of the entire evidence in the record, which reflects no actual treatment for claimant's alleged depression other than intermittent

prescriptions for Wellbutrin from her primary care physician. However, as depicted above, claimant stopped using the medication in 2015 and she told her doctor her depression was under control without medication (14F/7). The record also indicates that although claimant's symptoms have been present for many years, her annual earnings reveal a generally steady, albeit low, income from at least 1994 through 2013 with additional work activity in 2015 (6D).

(PageID.50).

The ALJ's assessment of Dr. Gensterblum's opinion and his decision to afford such little weight are supported by substantial evidence. Moreover, as Defendant correctly asserts, Plaintiff routinely denied experiencing depression or anxiety during office visits. (PageID.370, 373, 380, 383, 485, 490, 496, 503, 507, 514). In sum, the ALJ's determination that Plaintiff does not suffer from a severe impairment is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Dated: March 19, 2018                          /s/ Ellen S. Carmody
                                               ELLEN S. CARMODY
                                               U.S. Magistrate Judge